# FILED UNDER SEAL

## PURSUANT TO 31 U.S.C. § 3730

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA; the States of CALIFORNIA, COLORADO, CONNECTICUT DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MARYLAND, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, and WASHINGTON; the Commonwealth of VIRGINIA; and the DISTRICT OF COLUMBIA *ex rel*. Whistling Wind LLC,<br><br>Plaintiffs and Plaintiff-Relator,<br><br>vs.<br><br>CENTENE CORPORATION,<br><br>Defendant. | Civil Action No.:<br><br><br><br>**FILED UNDER SEAL**<br><br><br><br>**JURY TRIAL DEMANDED** |

## FALSE CLAIMS ACT COMPLAINT

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................ 1

II.   JURISDICTION AND VENUE ......................................................................................... 2

III.  THE PARTIES ................................................................................................................... 2

    A.  Plaintiff-Relator ....................................................................................................... 2

    B.  Defendant .................................................................................................................. 3

IV.   STATUTORY AND REGULATORY BACKGROUND ................................................... 4

    A.  The False Claims Act ............................................................................................... 4

    B.  The Medicare Program ............................................................................................ 5

    C.  The Medicaid Program ............................................................................................ 8

    D.  The Materiality of Medical Necessity Under Medicare and Medicaid .................... 9

    E.  Reimbursements for Glucagon-Like Peptide-1 (GLP-1) Receptor Agonist Claims Under Medicare and Medicaid ................................................................................ 9

V.    FACTUAL BACKGROUND ........................................................................................... 11

    A.  Centene's Internal Policies Required Sufficient Clinical Documentation to Establish Medical Necessity Before Authorizing GLP-1 Prescriptions ................ 11

    B.  Plaintiff-Relator Audits Centene's GLP-1 Prescription Approvals ....................... 12

    C.  Plaintiff-Relator Discovers that Centene Pharmacy Services Routinely Ignored the Medicaid and HIM GLP-1 Policies and Identifies Problems with the Medicaid and Medicare Samples ............................................................................................ 14

    D.  Plaintiff-Relator's Superiors Bury the Findings ................................................... 17

VI.   CENTENE'S FALSE CLAIMS ...................................................................................... 20

On behalf of the United States of America ("United States"), the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, and Washington, the Commonwealth of Virginia, and the District of Columbia (collectively, "Plaintiff-States," and, together with the United States, individually and collectively, the "Government"), and pursuant to the *qui tam* provisions of the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, and analogous laws of the Plaintiff-States, Relator, Whistling Wind LLC ("Plaintiff-Relator" or "Relator"), files this *qui tam* Complaint against Defendant, Centene Corporation ("Centene" or "Defendant" or the "Company"), based upon Relator's personal knowledge and continuing investigation, and, in support thereof, alleges as follows:

## I.    <u>INTRODUCTION</u>

1.    This case involves Centene's fraudulent scheme to bill federal and state government healthcare programs and payors, specifically the Medicare and Medicaid programs ("Government Healthcare Programs"), for Glucagon-Like Peptide-1 Receptor Agonists drugs ("GLP-1(s)") that were not supported by any clinical documentation to establish medically necessity and therefore not eligible for reimbursement from the Government.

2.    From January 2024 to the present, and contrary to Medicare and Medicaid requirements and its own internal policies, Centene falsely and fraudulently submitted unsupported and medically unnecessary GLP-1 claims to the Government for reimbursement. As such, Centene violated the FCA and analogous laws of the Plaintiff-States, and obtained reimbursement for claims which it should not and would not have received if the Government had been aware of its misconduct.

1

## II.    JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732.  This Court has supplemental jurisdiction over the counts relating to the analogous state false claims acts pursuant to 28 U.S.C. § 1367.

4.    This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a) because Defendant can be found in, resides, or transacts business in this District. Additionally, this Court has personal jurisdiction over Defendant because acts prohibited by 31 U.S.C. § 3729 occurred in this District.

5.    Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendant transacts business in this District and numerous acts proscribed by 31 U.S.C. § 3729 occurred in this District.

6.    Plaintiff-Relator has complied with all procedural requirements of the laws under which this case is brought.

7.    Plaintiff-Relator's claims and this Complaint are not based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party, as enumerated in 31 U.S.C. § 3730(e)(3).

8.    Plaintiff-Relator is the original source of the information and alleged facts upon which this Complaint is based, as that phrase is used in the FCA and other laws at issue in this Complaint.  Plaintiff-Relator brings this action based on its direct knowledge and, where indicated, on information and belief.  None of the actionable allegations set forth in this Complaint are based on a public disclosure as set forth in 31 U.S.C. §3730(e)(4).

## III.    THE PARTIES

### A.    Plaintiff-Relator

9.    Plaintiff-Relator, Whistling Wind LLC, is a member-managed Delaware limited

2

liability company.  Throughout this Complaint, "Plaintiff-Relator" refers individually and collectively to this limited liability company and its sole member, who is a natural person currently employed by Centene as a Senior Internal Auditor.

10.    As detailed herein, Plaintiff-Relator discovered the fraudulent scheme alleged in the course of auditing Centene's pharmacy department ("Centene Pharmacy Services" or "Pharmacy").  Despite the fact that Plaintiff-Relator first escalated the problems found in the audit internally, Plaintiff-Relator's superiors effectively ignored and buried those findings.

**B.    Defendant**

11.    Centene is a for-profit healthcare company organized and existing under the laws of the State of Missouri.  Its principal place of business is located at 7700 Forsyth Boulevard, St. Louis, Missouri 63105.  According to its website, "Centene remains the largest Medicaid managed care organization in the country, the largest and longest-running carrier in the Health Insurance Marketplace ('HIM') and a national leader in managed long-term services and support."[1]

12.    Centene began as Family Hospital Physician Associates, a nonprofit Medicaid plan founded in 1984 by Elizabeth Brinn, before it received its current name in 1997 and moved its corporate headquarters to St. Louis under Michael Neidorff ("Neidorff"), the company's Chief Executive Officer from 1996 to 2022.  The company went public in 2001, and as of May 2025, has a market capitalization of over $28 billion.  Under Neidorff, the Company acquired a number of other insurance and healthcare companies, such as Health Net in 2015, Fidelis Care in 2017, and Magellan Health in 2021.

---

[1]Centene Corporation, *History*, https://www.centene.com/who-we-are/history.html (last visited July 29, 2025).

3

13.    In March 2022, Sarah London succeeded Neidorff as Chief Executive Officer and re-focused Centene's efforts on three main areas of business: Medicaid, Medicare, and the HIM. In the course of doing so, the Company's compliance system was also restructured, with a big push towards resolving "key risks" identified when Neidorff lead the Company. Unfortunately, Centene did not actually address the key risks that were identified; instead, it minimized, hid, and exacerbated the documented compliance issues.

14.    Centene has a significant presence in Pennsylvania, including in Philadelphia. It established its operations in the Commonwealth in 2003, where it offers Medicaid, Medicare, and HIM services and products through, respectively, PA Health & Wellness, Wellcare, and Ambetter Health.[2]  As of March 2025, Centene employs over 900 employees in offices in Philadelphia, Mechanicsburg, Pittsburgh, Erie, and Moosic.

IV.    **STATUTORY AND REGULATORY BACKGROUND**

A.    **The False Claims Act**

15.    Under 31 U.S.C. § 3729, liability for violating the FCA accrues to any person who, inter alia, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; conspires to commit a violation" of the aforementioned violations or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."

16.    The FCA defines the terms "knowing" and "knowingly" as "actual knowledge of

---

[2]Centene Corporation, *Pennsylvania Health Insurance*, https://www.centene.com/products-and-services/browse-by-state/pennsylvania.html (last visited June 25, 2025).

4

information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). Under the FCA, there is no requirement that a relator prove that a defendant had a specific intent to defraud the Government. 31 U.S.C. § 3729(b)(1)(B).

17.     The Government has deemed violations of the FCA to be material to its decisions to pay healthcare claims, demonstrated, in part, through the requirement that providers and suppliers certify compliance with the FCA as a condition of payment under Medicare and Medicaid. If the Government had been aware that the claims discussed herein resulted from conduct that violated the FCA, it would not have paid the claims submitted in connection with Defendant's unlawful conduct.

**B.     The Medicare Program**

18.     Congress enacted Title XVII of the Social Security Act ("SSA") in order to establish the Medicare Act, also known as Medicare, in 1965. Medicare allocates federal funding for an array of medical care services for people who are 65 years of age or older, and for people with disabilities. The services for which Medicare reimburses providers include those from, *inter alia*, any health care practitioner and any other person (including a hospital or other health care facility, organization, or agency), as outlined in 42 U.S.C. § 1320c-5(a).

19.     The United States Department of Health and Human Services ("HHS") is responsible for the administration and supervision of the Medicare program. The Centers for Medicare and Medicaid Services ("CMS") is housed within HHS and is directly responsible for the administration of the Medicare program.

20.     Medicare consists of four components: Part A, Part B, Part C, and Part D. Medicare Part D is a voluntary outpatient prescription drug benefit administered by private health payers (plan sponsors) through stand-alone Prescription Drug Plans or Medicare

Advantage plans with a Part D benefit.   Each year, the CMS issues guidance that defines a standard Part D benefit.  The defined standard benefit sets limits on out-of-pocket spending, deductibles, and cost sharing.  CMS requires every Part D sponsor to offer at least one basic plan in a given service area that is the standard benefit.

21.     In order to obtain reimbursement from Medicare for a specific claim, providers must submit a CMS Form 1500 Health Insurance Claim ("CMS Form 1500").[3]  CMS Form 1500 requires information such as the names of the provider, patient, referring physician, the procedure code for the services provided, the related diagnosis code(s), the dates of service, and the amount(s) charged.  It also requires that the provider certify that "the services listed above were medically indicated and necessary to the health of this patient."  CMS Form 1500, at 2.

22.     CMS Form 1500 further requires the provider to certify that the information provided is truthful and that by the provider's signature, the provider "understand[s] that payment and satisfaction of the claim will be from Federal and State funds, and that any false claims, statements, or documents, or concealment of a material fact, may be prosecuted under applicable Federal and State laws."  In addition, CMS Form 1500 provides notice about the consequences for submitting false claims to the Government, as follows: "NOTICE: Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."  Specifically, for Medicare claims, CMS Form 1500 includes an additional notice: "NOTICE: Anyone who misrepresents or falsifies essential information to receive payment from Federal funds requested by this form may upon conviction be subject to

---

[3]Centers for Medicare & Medicaid Services, *CMS 1500*, https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/CMS-Forms-Items/CMS1188854 (last modified Feb. 1, 2012).

fine and imprisonment under applicable Federal laws."

23.    Moreover, to qualify for Medicare reimbursements, a healthcare provider must first enroll in the Medicare program by completing the provider enrollment application, CMS Form 855I (Medicare Enrollment Application for Physicians and Non-Physician Practitioners).[4] By signing CMS Form 855I, physician and non-physician providers make certain certification statements to the Government, including the following:

> 3. I have read and understand the Penalties for Falsifying Information, as printed in this application. I understand that any deliberate omission, misrepresentation, or falsification of any information contained in this application or contained in any communication supplying information to Medicare, or any deliberate alteration of any text on this application, may be punishable by criminal, civil, or administrative penalties including, but not limited to, the denial or revocation of Medicare billing privileges, and/or the imposition of fines, civil damages, and/or imprisonment.

> . . .

> 6. I agree that any existing or future overpayment made to me, or to my business as reported in section 4A, by the Medicare program, may be recouped by Medicare through the withholding of future payments.

> . . .

> 8. I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

24.    Similarly, to qualify for Medicare reimbursements, institutional healthcare providers must first enroll in the Medicare program by completing a provider enrollment application, CMS Form 855A (Medicare Enrollment Application for Institutional Providers).[5] By signing CMS Form 855A, institutional providers make certain certification statements to the

---

[4]Centers for Medicare & Medicaid Services, *CMS 855I*, https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/CMS-Forms-Items/CMS019477 (last modified May 1, 2023).
[5]Centers for Medicare & Medicaid Services, *CMS 855A*, https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/CMS-Forms-Items/CMS019475 (last modified Sept. 1, 2024).

Government, including the following:

> 2. I have read and understand the Penalties for Falsifying Information, as printed in this application. I understand that any deliberate omission, misrepresentation, or falsification of any information contained in this application or contained in any communication supplying information to Medicare, or any deliberate alteration of any text on this application form, may be punished by criminal, civil, or administrative penalties including, but not limited to, the denial or revocation of Medicare billing privileges, and/or the imposition of fines, civil damages, and/or imprisonment.

> . . .

> 5. I agree that any existing or future overpayment made to the provider by the Medicare program may be recouped by Medicare through the withholding of future payments.

> . . .

> 6. I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and I will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

**C.**     **The Medicaid Program**

25.     Medicaid was also created in 1965 as part of the SSA and authorized federal grants to states for medical assistance to low-income, blind, or disabled persons, or members of families with dependent children or qualified pregnant women or children.  The Medicaid program is jointly financed by the federal and state governments.  CMS administers Medicaid on the federal level and the federal portion of each state's Medicaid expenditures varies by state. States pay medical providers directly, but they procure the federal share of payment from accounts which draw on the United States Treasury.  42 C.F.R. §§ 430.0–430.30 (1994).

26.     The law requires state Medicaid plans to execute written agreements between the Medicaid agency and each provider furnishing services under the plan ("provider agreements"). 42 C.F.R. § 431.107(b).  Providers who participate in the Medicaid program must sign provider agreements with their states that certify compliance with the state and federal Medicaid requirements.  Although there are variations among the states, the agreement typically requires

8

the prospective Medicaid provider to agree that he or she will comply with all state and federal laws and Medicaid regulations in billing the state Medicaid program for services or supplies furnished.

**D.      The Materiality of Medical Necessity Under Medicare and Medicaid**

27.      For Medicare Part D coverage to apply to a drug prescription, the drug must be approved by the Food and Drug Administration for such usage and its prescription medically necessary and reasonable.  42 U.S.C. § 1395w-102(e); 42 U.S.C. § 1396r-8(k)(2)(A)(i); 42 U.S.C. § 1395y(a)(1)(A).  Indeed, providers must attest to the latter every time they submit a claim to the Government for payment.

28.      As is the case with Medicare, medical necessity is a critical factor for determining eligibility for Medicaid-reimbursable therapy and treatment services.  See 42 C.F.R. § 440.230(b) ("[e]ach [medical] service must be sufficient in amount, duration, and scope to reasonably achieve its purpose").  Each state determines its own medical necessity criteria for Medicaid reimbursement.  *See* 42 C.F.R. § 440.230(d).

29.      As such, "claims for medically unnecessary treatment are actionable under the FCA."  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004); *see United States v. Care Alternatives*, 952 F.3d 89, 97 (3d Cir. 2020) (quoting *United States ex rel. Walker v. R&F Props. of Lake City., Inc.*, 433 F.3d 1349, 1356 (11th Cir. 2005)) ("Medicare claims may be false if they claim reimbursement for services or costs that either are not reimbursable [*i.e.*, medically unnecessary] or were not rendered as claimed.").

**E.      Reimbursements for Glucagon-Like Peptide-1 (GLP-1) Receptor Agonist Claims Under Medicare and Medicaid**

30.      GLP-1s, marketed under brand names such as Wegovy and Ozempic, are a class of medications used primarily for the treatment of type 2 diabetes mellitus.  However, GLP-1s

9

have recently gained attention for their effectiveness in obesity treatment even though not all GLP-1s are approved by the FDA for weight loss.  The FDA has only approved three GLP-1s for the treatment of obesity at this time: Saxenda, Wegovy and Zepbound.[6]  Despite Ozempic's popularity as a weight loss treatment, the FDA has only approved it for the treatment of type 2 diabetes mellitus.  As such, the increased demand for GLP-1 drugs has led to discussions about their coverage under Medicare's outpatient prescription drug benefit (Part D) and the associated spending implications.[7]

31.    Under the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108–173, Medicare coverage excludes drugs used for anorexia, weight loss, or weight gain.  As such, Medicare Part D does not cover GLP-1 drugs when used for such indications.  Instead, Medicare only covers GLP-1s if they are used for a medically accepted, FDA-approved indication other than obesity, like diabetes or cardiovascular disease risk reduction.

32.    As of August 2024, only 13 states allow their Medicaid programs to cover GLP-1s for obesity: Kansas, Minnesota, Wisconsin, Michigan, Mississippi, Pennsylvania, Virginia, North Carolina, Massachusetts, New Hampshire, Delaware, and Rhode Island.[8]  And as of April 2025, Medicare still prohibits reimbursement for GLP-1s prescribed for weight loss.[9]

---

[6]*FDA Approves New Drug Treatment for Chronic Weight Management, First Since 2014*, FDA (Jun. 4, 2021), https://www.fda.gov/news-events/press-announcements/fda-approves-new-drug-treatment-chronic-weight-management-first-2014.

[7]Laura A. Wreschnig, *Medicare Coverage of GLP-1 Drugs*, Congress.gov (Sept. 9, 2024), https://crsreports.congress.gov/product/pdf/IF/IF12758.

[8]*State Medicaid programs grapple with covering GLP-1 weight loss drugs*, Health Policy Institute of Ohio (Jan. 10, 2025), https://www.healthpolicyohio.org/health-policy-news/2025/01/10/state-medicaid-programs-grapple-with-covering-glp-1-weight-loss-drugs.

[9]*Anti-Obseity Drugs Will Not Be Covered by Medicare and Medicaid in 2026*, American College of Gastroenterology (April 17, 2025), https://gi.org/2025/04/17/anti-obesity-drugs-will-not-be-covered-by-medicare-and-medicaid-in-2026/ (citing 90 F.R. 15792).

33.     Both Medicaid and Medicare require prior authorization before GLP-1s can be prescribed.

## V.    FACTUAL BACKGROUND

### A.    Centene's Internal Policies Required Sufficient Clinical Documentation to Establish Medical Necessity Before Authorizing GLP-1 Prescriptions

34.     Centene issued clinical policies setting forth the criteria for approving GLP-1 prescriptions for patients covered by the Medicaid and Medicare programs and HIM (respectively, the "Medicaid GLP-1 Policy," the "Medicare GLP-1 Policy," and the "HIM GLP-1 Policy," and collectively the "GLP-1 Policies").

35.     According to Centene's Medicaid and HIM GLP-1 Policies, "GLP-1 receptor agonists are medically necessary" when the Policy requirements are met.  Upon information and belief, the Medicare GLP-1 Policy also focuses on medical necessity as a basis for coverage.

36.     The Medicaid GLP-1 Policy adheres strictly to Medicare's restriction on the use of GLP-1 prescriptions, which limits the use of GLP-1s to the treatment of type 2 diabetes mellitus.  The Medicaid GLP-1 further emphasizes the importance of sufficient clinical documentation as a prerequisite for approval.  The type 2 diabetes mellitus restriction applies to potential off-label prescriptions as well.  The approval duration for GLP-1s is limited to 12 months at a time, to ensure that the prescription is still medically necessary and/or suitable for the patient when it comes to time to renew the prescription.

37.     Likewise, the HIM GLP-1 Policy limits the use of GLP-1 prescriptions to type 2 diabetes mellitus treatment.  The Policy provides that the "[p]rovider must submit documentation (such as office chart notes, lab results or other clinical information) supporting that member has met all approval criteria" for a prescription to be approved.  It also imposes the same restrictions to potential off-label prescriptions.  Like the Medicaid GLP-1 Policy, the approval duration is

11

limited to 12 months to ensure that the prescription is still medically necessary and/or suitable for the patient.

38.    Upon information and belief, the Medicare GLP-1 Policy shares the same restrictions on FDA-approved indications, documentation requirements, and 12-month coverage limit.

39.    There are known risks with prescribing and approving GLP-1s, including allergic reactions, hypoglycemia, gastroparesis, renal failure, gall bladder problems, thyroid tumors, nausea, vomiting, diarrhea, and rare cases of pancreatitis.  In addition, the effects of GLP-1s on pregnant and breastfeeding women are currently unknown, so such populations cannot be approved for GLP-1 prescriptions.

40.    These contraindications are important to identify and document for patient safety and must be screened, with the appropriate necessity documents provided, before any GLP-1 prescription is approved and dispensed.  These safety risks are one of the reasons that Medicare and Medicaid impose prior authorization and type 2 diabetes mellitus limitations on GLP-1 prescriptions.  Indeed, Centene incorporates prior authorization and type 2 diabetes mellitus limitations in its Medicare and Medicaid GLP-1 Policies because it is aware of the safety risks.

**B.    Plaintiff-Relator Audits Centene's GLP-1 Prescription Approvals**

41.    Since January 1, 2024, Centene Pharmacy Services has directly serviced GLP-1 prescriptions for Medicaid and HIM patients, while Express Scripts or its subsidiaries ("ESI") serviced GLP-1 prescriptions for Medicare patients pursuant to its contract with Centene Pharmacy Services.

42.    In or around August 2024, Plaintiff-Relator was tasked with conducting a comprehensive audit of Centene's GLP-1 prescription approvals from January 1, 2024, to June 30, 2024.  The scope of the audit included the following:

12

- A review of CPS Glucagon Like Peptide-1 Receptor Agonists ("GLP-1RA") drug approvals to ensure medical necessity criteria were followed as established by the FDA, ADA, and CMS guidelines, which are upheld through the Medicaid GLP-1 and HIM Policies approved by the Clinical Pharmacy Advisory Committee and Corporate Pharmacy and Therapeutics Committee.

- A review of whether GLP-1RA authorization denial and appeal letters were timely and accurate, and a review of all CLP-1 claims for turnaround time (TAT) requirements.

- An analysis of a universe of Prescription Drug Plan member denial letters for TAT requirements and a detail-test of a sample of letters to ensure appropriateness of letter content as per internal policies.[10]

Plaintiff-Relator also performed a similar review of the Medicare prescription approval process, which Centene subcontracted to ESI.

43.    To test the GLP-1 approval processes' compliance with the GLP-1 Policies, Plaintiff-Relator first reviewed a random sample of 26 of the total 253,006 GLP-1 prescriptions that were approved between January 1, 2024 and June 30, 2024.

44.    Those 26 samples consisted of: six (6) Medicare GLP-1 prescription approvals; ten (10) Medicaid GLP-1 prescription approvals; and ten (10) HIM GLP-1 prescription approvals.  Second, Plaintiff-Relator reviewed a random sample of twenty (20) claim denials and subsequent appeals.[11]  These 19 samples consisted of: five (5) Medicare GLP-1 denials and appeals; ten (10) Medicaid GLP-1 denials and appeals; and four (4) HIM GLP-1 denials and appeals.[12]

---

[10] The audit also studied, *inter alia*, Centene Pharmacy Services' call center metrics, member complaint response turnaround times, and vendor oversight.

[11] As the audit analyzed both the underlying prescription denial and the appeal, Plaintiff-Relator looked at a total of 40 prescription reviews.

[12] Plaintiff-Relator reviewed five HIM appeals packets, but one sample was removed from the population as it fell out of the January 1, 2024 to June 30, 2024 date range.

45.     The audit revealed repeated compliance gaps, especially with, as is relevant here, the GLP-1 Policies' documentation requirements that are essential to establishing medical necessity and therefore coverage eligibility.

**C.     Plaintiff-Relator Discovers that Centene Pharmacy Services Routinely Ignored the Medicaid and HIM GLP-1 Policies and Identifies Problems with the Medicaid and Medicare Samples**

46.     In the course of the audit, Plaintiff-Relator discovered that, in contravention of the Medicaid GLP-1 and HIM GLP-1 Policies, seven of the Medicaid and HIM[13] sample prescription approvals were missing supporting clinical documentation:

| Internal Sample No. | Health Plan | Drug | Issue |
|---|---|---|---|
| 9 | MI Medicaid – Meridian (Michigan Medicaid) | TRULICITY Soln Pen-inj 1.5MG/0.5ML | Pharmacist unilaterally updated the patient's diagnosis, which was missing from the source documentation, to Type 2 diabetes to support prescription. |
| 14 | Carolina Complete Health (North Carolina Medicaid) | OZEMPIC (0.25 OR 0.5 MG/DOSE) Soln Pen-inj 2MG/3ML | The bedside primary care practitioner/doctor discontinued Ozempic and ordered Vitoza, another GLP-1, in the source documentation. The prescription was changed back to Ozempic based solely on electronic entries in the decision tree[14] that Vitoza was "not effective"; there was no supporting documentation, "such as office notes, lab results . . . supporting that [the] member has met all approval criteria." |

---

[13]While the problematic HIM prescription claims are not actionable under the FCA, the audit findings on such samples are detailed here for additional context and to illustrate that Centene Pharmacy Services' non-compliance with the clinical documentation requirement is systemic.

[14]Centene provides a "decision tree" for the prescriber to complete as part of its prescription interface. An illustration of it is provided below. *See* Section IV.D, *infra*.

14

| Internal Sample No. | Health Plan | Drug | Issue |
|---|---|---|---|
| 15 | Managed Health Services of IN (Indiana Medicaid) | OZEMPIC (0.25 OR 0.5 MG/DOSE) Soln Pen-inj 2MG/3ML | The prescription was approved even though the member's A1c (blood sugar) level was too low to tolerate the medication. |
| 20 | HIM ARKANSAS | VICTOZA Soln Pen-inj 18 MG/3ML | Approval was based solely on the prescriber's electronic decision tree entries; there was no actual documentation, including the required "office chart notes and lab results." |
| 22 | HIM SUPERIOR | MOUNJARO Soln Pen-inj 5MG/0.5ML | Approval was based solely on the prescriber's electronic decision tree entries; there was no actual documentation, including the required "office chart notes and lab results." |
| 23 | HIM PEACHSTATE | MOUNJARO Soln Pen-inj 5MG/0.5ML | Approval was based solely on the prescriber's electronic decision tree entries; there was no actual documentation, including the required "office chart notes and lab results." |
| 25 | HIM PEACHSTATE | RYBELSUS Tablet 3MG | Approval was based solely on the prescriber's electronic decision tree entries; there was no actual documentation, including the required "office chart notes and lab results." |

47.    Indeed, two of the sample Medicaid approvals missing the required documentation had documented ***contraindications*** (Internal Sample Nos. 9 and 15), which clearly would not support a finding of "medical necessity."  Similarly, one of the Medicare samples (Medicare Sample No. 5, *infra*) approved the use of a GLP-1 for a member suffering from kidney problems, even though GLP-1s are not recommended for patients with such issues.

48.    One of the HIM GLP-1 denial and appeal samples, in which the initial denial was overturned on appeal, lacked sufficient documentation.  Nevertheless, the Manager of Internal

15

Audit, Mary Curran ("Curran"), instructed Plaintiff-Relator to omit that sample from the analysis because it conveniently fell out of the audit period.[15]

49. Separately, eight of the sample HIM prescription approvals, three of which were already missing the required documentation (Internal Sample Nos. 20, 23, and 25), provided coverage for a period in excess of one year, in contravention to the HIM GLP-1 Policy's 12-month limit. Meanwhile, all six of the sample Medicare approvals covered a period in excess of one year, in contravention to the Medicare GLP-1 Policy's 12-month limit:

| Internal Sample No. | Health Plan | Drug | Length of Coverage |
|---|---|---|---|
| 17 | HIM PEACHSTATE | OZEMPIC (0.25 OR 0.5 MG/DOSE) Soln Pen-inj 2MG/3ML | 6/7/24 to 6/21/25 |
| 18 | HIM SUPERIOR | OZEMPIC (0.25 OR 0.5 MG/DOSE) Soln Pen-inj 2MG/3ML | 3/11/24 to 3/25/25 |
| 19 | HIM Ambetter North Carolina | OZEMPIC (1 MG/DOSE) Soln Pen-inj 4MG/3ML | 3/24/24 to 5/5/25 |
| 20 | HIM ARKANSAS | VICTOZA Soln Pen-inj 18 MG/3ML | 4/1/24 to 4/15/25 |
| 21 | NY Exchange – HIM | OZEMPIC (2 MG/DOSE) Soln Pen-inj 8MG/3ML | 6/7/24 to 6/21/25 |
| 23 | HIM PEACHSTATE | MOUNJARO Soln Pen-inj 5MG/0.5ML | 1/31/24 to 2/13/25 |
| 24 | HIM FLORIDA | TRULICITY Soln Pen-inj 1.5MG/0.5ML | 4/22/24 to 5/6/25 |
| 25 | HIM PEACHSTATE | RYBELSUS Tablet 3MG | 2/13/24 to 2/26/25 |
| Medicare Sample No. 1 | Medicare-Prescription Drug Group ("PDG") | TRULICITY Soln Pen-inj 3MG/0.5 ML | Until 12/31/2099 |
| Medicare Sample No. 2 | Medicare-PDG | MOUNJARO Soln Pen-inj 2.5MG/0.5ML | Until 12/31/2099 |

---

[15]As detailed below, the other problematic samples identified by Plaintiff-Relator were also omitted or minimized through the audit report drafting process, if not before.

| Internal Sample No. | Health Plan | Drug | Length of Coverage |
|---|---|---|---|
| Medicare Sample No. 3 | Medicare-PDG | OZEMPIC (0.25 OR .5MG/DOSE) Soln Pen-inj 2MG/3 | Until 12/31/2099 |
| Medicare Sample No. 4 | Medicare-PDG | RYBELSUS Tablet 7MG | Until 12/31/2099 |
| Medicare Sample No. 5 | Medicare-PDG | BYDUREON BCISE Auto-injector 2MG/0.85ML | Until 12/31/2099 |
| Medicare Sample No. 6 | Medicare-PDG | VITOZA Soln Pen-inj 18MG/3ML | Until 12/31/2099 |

50.     Moreover, all six sample Medicare approvals included initial, lower dosage authorizations that were superseded by second, higher dosage authorizations.  However, there is no way to confirm that ESI prevented duplicate authorizations, *i.e.*, simultaneous prescriptions for both dosages.

51.     In sum, of the ten Medicaid prescription approvals that Plaintiff-Relator reviewed, three of them, or 30%, had insufficient clinical documentation in violation of Centene's Medicaid GLP-1 Policy, while two of them, or 20% of the Medicaid samples, also had documented contraindications.  Of the 16 HIM prescription approvals that Plaintiff-Relator reviewed, four of them, or 25%, had insufficient clinical documentation in violation of Centene's HIM GLP-1 Policy, while eight of them, or 50% of the HIM claim approvals, had coverage periods exceeding 12 months in violation of Centene's HIM GLP-1 Policy.  All six Medicare prescription approvals had coverage periods exceeding 12 months in violation of Centene's Medicare GLP-1 Policy and no verification that there were no duplicate authorizations, while one of the six, or 16.66%, approved a GLP-1 that was not suitable for the patient.

**D.     Plaintiff-Relator's Superiors Bury the Findings**

52.     Plaintiff-Relator completed the audit in August 2024, upon which time Plaintiff-Relator turned over the assessment of the Medicare samples to ESI and prepared to present the

17

findings on the Medicaid and HIM samples to the Pharmacy team. Though Plaintiff-Relator kept Curran apprised of the audit process, Curran refused Plaintiff-Relator's offers to walk through the summary findings. Nevertheless, Curran was heavily involved in minimizing and revising the analysis based on those very findings.

53.     When Plaintiff-Relator was drafting the assessment of the Medicare samples, Curran directed Plaintiff-Relator to write that there were no duplicate authorizations on the basis that none appeared in the samples Plaintiff-Relator reviewed, despite there being no verification or confirmation from ESI. Curran further instructed Plaintiff-Relator to write that the extended coverage periods for all six samples were inconsequential because of Medicare's annual enrollment. Curran also told Plaintiff-Relator to omit the Medicare sample with the potentially risky GLP-1 prescription on the pretext that there was insufficient information to confirm that the patient was at risk.

54.     Curran and her superiors engaged in the same revisionary approach to Plaintiff-Relator's assessments of the Medicaid and HIM samples. Curran and Plaintiff-Relator reviewed Plaintiff-Relator's summary findings with the Pharmacy team leaders, Kristen E. Blair and Alissa Berry, on September 4, 2024. At the meeting, the Pharmacy team leaders pushed back on the documentation requirements of the Medicaid and HIM GLP-1 Policies, insisting that the "decision tree" presented in the prescription software was sufficient "documentation." Plaintiff-Relator pointed out to them, however, that relying solely on the "decision tree" software does not satisfy the documentation requirements of the Policies because it does not provide any verifiable clinical support. This is illustrated by the "decision tree" for Internal Audit Sample No. 9:

18



55.    This was the first of many exchanges between Plaintiff-Relator, Curran, their superiors (including Jack A. McGowan, the Senior Director of Audit, and Justin Substad, the Vice President of Compliance), and the Centene Pharmacy Services team on the Pharmacy's non-compliance with the Medicaid GLP-1 and HIM GLP-1 Policies. Rather than expand the scope of the audit to determine the extent of such non-compliance, Plaintiff-Relator's superiors watered down the assessment and initial draft report.

56.    These changes included, *inter alia*:

- Removing references to the contraindications for certain samples from the drafts and final audit report;
- Removing language specifying the percentage of flawed samples, detailing the mandatory nature and scope of the clinical documentation requirement, and referencing approved uses and the importance of ensuring no adverse reactions;
- Recharacterizing Centene Pharmacy Services' non-compliance with GLP-1 and HIM GLP-1 Policies as a "policy alignment" issue;
- Lowering the "policy alignment" issue in priority (from first to third); and
- Recharacterizing the identified risk of the "policy alignment" issue as the "lack of standard documentation criteria."

57.    Nevertheless, Plaintiff-Relator's superiors instructed the Pharmacy interface to be modified such that: (1) GLP-1 prescriptions for type 2 diabetes mellitus treatment were separated

19

from GLP-1 prescriptions for obesity; and (2) the decision tree inputs were removed.  In doing so, Centene implicitly recognized the documentation problems with the GLP-1 claims in their previous system.

## VI.      **<u>CENTENE'S FALSE CLAIMS</u>**

58.      As of May 14, 2025, and according to its internal database, Centene submitted the following claims to Government Healthcare Programs for reimbursement for GLP-1 prescriptions (which include Contrave, Orlistat, Saxenda, Wegovy, Xenical, and Zepbound):

| Program (Treatment) | Claims | Billed Amount |
|---|---|---|
| Medicaid (obesity) | 467,045 | $504,027,167.22 |
| Medicaid (diabetes) | 3,032,298 | $1,815,197,279.69 |
| Medicare (obesity)[16] | 97,812 | $111,414,416.26 |
| Medicare (diabetes) | 5,582,659 | $6,008,358,553.44 |

59.      Pursuant to the applicable Medicaid and Medicare requirements, Centene was required to certify that the GLP-1 prescriptions were medically necessary as a condition for reimbursement.  *See* Sections IV.B–D, V.A, *supra*.  But based on Plaintiff-Relator's audit, and in contravention to Medicaid and Medicare requirements and Centene's internal policies, Centene systemically failed and continues to fail to ensure that the GLP-1 prescriptions it submits for reimbursement have sufficient clinical documentation to support the medical necessity requirement.  *See* Sections V.B–D, *supra*.  As a result, a significant number of the GLP-1 prescription claims were submitted to Government Healthcare Programs without sufficient clinical documentation and thus were not medically necessary, in violation of the FCA, 31 U.S.C. § 3729, *et seq.*, and the analogous false claims acts of Plaintiff-States.

---

[16]There has been no change to the prohibition on Medicare reimbursement for GLP-1s prescribed for weight loss as of April 2025.  *See* Section IV.E, *supra*.  Nevertheless, Centene's GLP-1 prescription database includes such figures.

## COUNT I
### (False Claims Act, 31 U.S.C. § 3729(a)(1)(A))

60.     Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

61.     Defendant has violated the FCA by knowingly failing to ensure that the GLP-1 prescriptions it submitted or caused to be submitted to the Government for reimbursement were medically necessary.

62.     Defendant falsely certified its compliance with the medical necessity and other requirements of CMS Forms 1500 and 855I, which are conditions for participating in the Medicare Program and receiving reimbursements from the program.

63.     By virtue of the acts alleged herein, Defendant knowingly presented, or caused to be presented, false or fraudulent claims to the United States for reimbursement to healthcare providers in the form of millions of dollars, in violation of 31 U.S.C. § 3729(a)(1)(A).

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the UNITED STATES OF AMERICA:

1. Three times the amount of actual damages which the United States of America has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 per false claim which Defendant presented or caused to be presented to the United States of America, pursuant to the Civil Monetary Penalties Inflation Adjustment Act of 1990, 28 C.F.R. § 85.5;
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR;

1. The maximum amount allowed pursuant to the FCA and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

21

3. An award of reasonable attorneys' fees and costs; and

4. Such further relief as this Court deems equitable and just.

## COUNT II
(Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(B))

64. Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

65. Defendant knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to the United States through its concealment of the inadequate documentation to support medical necessity of its GLP-1 prescriptions.

66. By virtue of the acts alleged herein, Defendant knowingly used, or caused to be used, false records or statements, and the United States has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, in violation of 31 U.S.C. § 3729(a)(1)(B).

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the UNITED STATES OF AMERICA:

1. Three times the amount of actual damages which the United States of America has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 per false claim which Defendant presented or caused to be presented to the United States of America, pursuant to the Civil Monetary Penalties Inflation Adjustment Act of 1990, 28 C.F.R. § 85.5;
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR;

1. The maximum amount allowed pursuant to the FCA and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and

22

4. Such further relief as this Court deems equitable and just.

## COUNT III
(False Claims Act, 31 U.S.C. § 3729(a)(1)(G))

67. Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

68. Defendant knowingly made, used, or caused to be made or used a false record or statement material to an obligation to pay money to the Government and it has concealed and improperly avoided an obligation to pay money to the Government.

69. By virtue of the facts alleged herein, Defendant knowingly concealed its obligation to report and repay past overpayment of Medicare and Medicaid claims for which Defendant knew they were not entitled and therefore knew refunds were properly due and owing to the Government, in violation of 31 U.S.C. § 3729(a)(1)(G).

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the UNITED STATES OF AMERICA:

1. Three times the amount of actual damages which the United States of America has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 per false claim which Defendant presented or caused to be presented to the United States of America, pursuant to the Civil Monetary Penalties Inflation Adjustment Act of 1990, 28 C.F.R. § 85.5;
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR;

1. The maximum amount allowed pursuant to the FCA and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

23

**COUNT IV**
(California False Claims Act,
Cal. Gov't Code § 12650, *et seq.*)

70.     Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

71.     This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of California to recover treble damages and civil penalties under the California False Claims Act, Cal. Gov't Code § 12650, *et seq*.

72.     Defendant violated Cal. Gov't Code § 12651(a) and knowingly false claims to be made, used, and presented to the State of California by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

73.     The State of California, by and through the California Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

74.     Compliance with applicable Medicare, Medi-Cal, and the various other federal and state laws cited herein was an implied and, upon information and belief, also an express condition of payment of claims submitted to the State of California in connection with Defendant's conduct.  Compliance with applicable California statutes, and regulations was also an express condition of payment of claims submitted to the State of California.

75.     Had the State of California known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with their conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on

24

false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

76. As a result of Defendant's violations of Cal. Gov't Code § 12651(a), the State of California has been damaged in an amount to be determined at trial.

77. Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint, which has brought this action pursuant to Cal. Gov't Code § 12652(c) on behalf of itself and the State of California.

78. Plaintiff-Relator requests this Court to accept supplemental jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of California in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF CALIFORNIA:

1. Three times the amount of actual damages which the State of California has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 per false claim, which Defendant presented or caused to be presented, to the State of California, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to Cal. Gov. Code § 12651(a);
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to Cal. Gov't Code § 12652 and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

25

**COUNT V**
(Colorado Medicaid False Claims Act,
Colo. Rev. Stat. § 25.5-4-303.5, *et seq.*)

79.    Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

80.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Colorado to recover treble damages and civil penalties under the Colorado Medicaid False Claims Act, C.R.S.A. § 25.5-4-304, *et seq*.

81.    Defendant violated the Colorado Medicaid False Claims Act and knowingly caused false claims to be made, used, and presented to the State of Colorado by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

82.    The State of Colorado, by and through the Colorado Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

83.    Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Colorado in connection with Defendant's conduct.  Compliance with applicable Colorado statutes, and regulations and was also an express condition of payment of claims submitted to the State of Colorado.

84.    Had the State of Colorado known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with its conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on

26

false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

85.     As a result of Defendant's violations of the Colorado Medicaid False Claims Act, the State of Colorado has been damaged in an amount to be determined at trial.

86.     Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to the Colorado Medicaid False Claims Act on behalf of itself and the State of Colorado.

87.     Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Colorado, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF COLORADO:

1. Three times the amount of actual damages which the State of Colorado has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 per false claim, which Defendant presented or caused to be presented to the State of Colorado, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to C.R.S.A. § 25.5-4-305(1);
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to Colorado Medicaid False Claims Act and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

27

## COUNT VI
(Connecticut False Claims Act,
Conn. Gen. Stat. § 4-274, *et seq.*)

88.     Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

89.     This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Connecticut to recover treble damages and civil penalties under the Connecticut False Claims Act, Conn. Gen. Stat. § 4-274, *et seq*.

90.     Defendant violated the Connecticut False Claims Act and knowingly caused false claims to be made, used and presented to the State of Connecticut by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

91.     The State of Connecticut, by and through the Connecticut Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

92.     Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Connecticut in connection with Defendant's conduct.  Compliance with applicable Connecticut statutes, and regulations was also an express condition of payment of claims submitted to the State of Connecticut.

93.     Had the State of Connecticut known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with its conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on

false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

94. As a result of Defendant's violations of the Connecticut False Claims Act, the State of Connecticut has been damaged in an amount to be determined at trial.

95. Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to the Connecticut False Claims Act on behalf of itself and the State of Connecticut.

96. Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Connecticut, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF CONNECTICUT:

1. Three times the amount of actual damages which the State of Connecticut has sustained as a result of Defendant's conduct;
2. A civil penalty of $28,619 for each false claim which Defendant caused to be presented to the State of Connecticut, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to Conn. Gen. Stat. § 4-275(b);
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to Connecticut False Claims Act, Conn. Gen. Stat. § 4-274, *et seq*., and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

**COUNT VII**
(Delaware False Claims and Reporting Act,
6 Del. Code § 1201, *et seq.*)

97.     Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

98.     This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Delaware to recover treble damages and civil penalties under the Delaware False Claims and Reporting Act, Title 6, Chapter 12 of the Delaware Code.

99.     Defendant violated 6 Del. C. § 1201(a) and knowingly caused false claims to be made, used, and presented to the State of Delaware by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

100.     The State of Delaware, by and through the Delaware Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

101.     Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Delaware in connection with Defendant's conduct.  Compliance with applicable Delaware statutes, and regulations was also an express condition of payment of claims submitted to the State of Delaware.

102.     Had the State of Delaware known that Defendant were violating the federal and state laws cited herein and/or that the claims submitted in connection with its conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on

false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

103.    As a result of Defendant's violations of 6 Del. C. § 1201(a), the State of Delaware has been damaged in an amount to be determined at trial.

104.    Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to 6 Del. C. § 1203(b) on behalf of itself and the State of Delaware.

105.    Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Delaware, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF DELAWARE:

1. Three times the amount of actual damages which the State of Delaware has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 for each false claim which Defendant caused to be presented to the State of Delaware, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to 6 Del. C. § 1201(a);
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to 6 Del C. § 1205, and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

31

**COUNT VIII**
(Florida False Claims Act,
Fla. Stat. § 68.081, *et seq.*)

106. Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

107. This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Florida to recover treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. § 68.082, *et seq*.

108. Defendant violated Fla. Stat. § 68.082(2) and knowingly caused false claims to be made, used, and presented to the State of Florida by its deliberate and systematic violation of federal and state laws, including Fla. Stat. § 409.920(2), and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

109. The State of Florida, by and through the Florida Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

110. Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Florida in connection with Defendant's conduct. Compliance with applicable Florida statutes, and regulations was also an express condition of payment of claims submitted to the State of Florida.

111. Had the State of Florida known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with its conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on false

32

and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

112. As a result of Defendant's violations of Fla. Stat. § 68.082(2), the State of Florida has been damaged in an amount to be determined at trial.

113. Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to Fla. Stat. § 68.083(2) on behalf of itself and the State of Florida.

114. Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Florida, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF FLORIDA:

1. Three times the amount of actual damages which the State of Florida has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant caused to be presented to the State of Florida, pursuant to Fla. Stat. § 68.082;
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to Fla. Stat. § 68.085 and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

## COUNT IX
(Georgia False Medicaid Claims Act,
Ga. Code § 49-4-168, *et seq.*)

115.    Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

116.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Georgia to recover treble damages and civil penalties under the Georgia False Medicaid Claims Act, Ga. Code Ann., § 49-4-168, *et seq*.

117.    Defendant violated the Georgia False Medicaid Claims Act and knowingly caused false claims to be made, used, and presented to the State of Georgia by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

118.    The State of Georgia, by and through the Georgia Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

119.    Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied and, upon information and belief, also an express condition of payment of claims submitted to the State of Georgia in connection with Defendant's conduct.  Compliance with applicable Georgia statutes, and regulations was also an express condition of payment of claims submitted to the State of Georgia.

120.    Had the State of Georgia known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on

34

false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

121. As a result of Defendant's violations of the Georgia False Medicaid Claims Act, the State of Georgia has been damaged in an amount to be determined at trial.

122. Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to the Georgia False Medicaid Claims Act on behalf of itself and the State of Georgia.

123. Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Georgia, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF GEORGIA:

1. Three times the amount of actual damages which the State of Georgia has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 for each false claim which Defendant caused to be presented to the State of Georgia, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to Ga. Code Ann., § 49-4-168.1;
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to Georgia False Medicaid Claims Act, Ga. Code Ann., § 49-4-168, and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

35

**COUNT X**
(Hawaii False Claims Act,
Haw. Rev. Stat. § 661-21, *et seq.*)

124. Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

125. This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Hawaii to recover treble damages and civil penalties under the Hawaii False Claims Act, Haw. Rev. Stat. § 661-21, *et seq*.

126. Defendant violated Haw. Rev. Stat. §661-21(a) and knowingly caused false claims to be made, used, and presented to the State of Hawaii by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

127. The State of Hawaii, by and through the Hawaii Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

128. Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied and, upon information and belief, also an express condition of payment of claims submitted to the State of Hawaii in connection with Defendant's conduct. Compliance with applicable Hawaii statutes and regulations was also an express condition of payment of claims submitted to the State of Hawaii.

129. Had the State of Hawaii known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on

36

false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

130. As a result of Defendant's violations of Haw. Rev. Stat. § 661-21(a), the State of Hawaii has been damaged in an amount to be determined at trial.

131. Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to Haw. Rev. Stat. § 661-25(a) on behalf of itself and the State of Hawaii.

132. Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Hawaii, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF HAWAII:

1. Three times the amount of actual damages which the State of Hawaii has sustained as a result of Defendant's illegal conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 for each false claim which Defendant caused to be presented to the State of Hawaii, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to Haw. Rev. Stat. § 661-21(a);
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to Haw. Rev. Stat. §661-27 and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

## COUNT XI
(Illinois False Claims Act,
740 Ill. Comp. Stat. 175/1, *et seq.*)

133.    Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

134.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Illinois to recover treble damages and civil penalties under the Illinois False Claims Act, 740 ILCS 175, *et seq*.

135.    Defendant furthermore violated 740 ILCS 175/3(a) and knowingly caused false claims to be made, used, and presented to the State of Illinois by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

136.    The State of Illinois, by and through the Illinois Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

137.    Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Illinois in connection with Defendant's conduct.  Compliance with applicable Illinois statutes and regulations was also an express condition of payment of claims submitted to the State of Illinois.

138.    Had the State of Illinois known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on

38

false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

139.    As a result of Defendant's violations of 740 ILCS 175/3(a), the State of Illinois has been damaged in an amount to be determined at trial.

140.    Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to 740 ILCS 175/3(b) on behalf of itself and the State of Illinois.

141.    Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Illinois, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF ILLINOIS:

1. Three times the amount of actual damages which the State of Illinois has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 for each false claim which Defendant caused to be presented to the State of Illinois, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to Cal. Gov. Code § 12651(a);
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to 740 ILCS 175/4(d) and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

## COUNT XII
(Indiana False Claims and Whistleblower Protection Act,
Ind. Code § 5-11-5.5-1, *et seq.*)

142.    Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

143.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Indiana to recover treble damages and civil penalties under the Indiana False Claims and Whistleblower Protection Act, Indiana Code § 5-11-5.5-1, *et seq*.

144.    Defendant violated Indiana's False Claims Act and knowingly caused false claims to be made, used, and presented to the State of Indiana by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

145.    The State of Indiana, by and through the Indiana Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

146.    Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Indiana in connection with Defendant's conduct. Compliance with applicable Indiana statutes and regulations was also an express condition of payment of claims submitted to the State of Indiana.

147.    Had the State of Indiana known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on

false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

148. As a result of Defendant's violations of Indiana's False Claims Act, the State of Indiana has been damaged in an amount to be determined at trial.

149. Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to Indiana Code § 5-11-5.5-1, *et seq.*, on behalf of itself and the State of Indiana.

150. Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Indiana, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF INDIANA:

1. Three times the amount of actual damages which the State of Indiana has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $5,000 for each false claim which Defendant caused to be presented to the State of Indiana, pursuant to Indiana Code § 5-11-5.5-2(a);
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to Indiana Code § 5-11-5.5-1, *et seq.*, and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

41

**COUNT XIII**
(Indiana Medicaid False Claims and Whistleblower Protection Act,
Ind. Code § 5-11-5.7-1, *et seq.*)

151.    Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

152.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Indiana to recover treble damages and civil penalties under the Indiana Medicaid False Claims and Whistleblower Protection Act, Indiana Code §§ 5-11-5.7-1, *et seq.*

153.    Defendant violated Indiana's Medicaid False Claims Act and knowingly caused false claims to be made, used, and presented to the State of Indiana by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

154.    The State of Indiana, by and through the Indiana Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

155.    Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Indiana in connection with Defendant's conduct.  Compliance with applicable Indiana statutes and regulations was also an express condition of payment of claims submitted to the State of Indiana.

156.    Had the State of Indiana known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on

42

false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

157.    As a result of Defendant's violations of Indiana's Medicaid False Claims Act, the State of Indiana has been damaged in an amount to be determined at trial.

158.    Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to Indiana Code §§ 5-11-5.7-1, *et seq.*, on behalf of itself and the State of Indiana.

159.    Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Indiana, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF INDIANA:

1. Three times the amount of actual damages which the State of Indiana has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $5,000 for each false claim which Defendant caused to be presented to the State of Indiana;
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to Indiana Code § 5-11-5.7-1, *et seq.*, and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

43

## COUNT XIV
(Iowa False Claims Act,
Iowa Code § 685.1, *et seq.*)

160.   Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

161.   This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Iowa to recover treble damages and civil penalties under the Iowa False Claims Act, I.C.A. § 685.1, *et seq.*

162.   Defendant furthermore violated the Iowa False Claims Act, I.C.A. § 685.1, *et seq.*, and knowingly caused false claims to be made, used, and presented to the State of Iowa by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

163.   The State of Iowa, by and through the Iowa Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

164.   Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Iowa in connection with Defendant's conduct.  Compliance with applicable Iowa statutes and regulations was also an express condition of payment of claims submitted to the State of Iowa.

165.   Had the State of Iowa known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on

false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

166.    As a result of Defendant's violations of the Iowa False Claims Act, I.C.A. § 685.1, *et seq.*, the State of Iowa has been damaged in an amount to be determined at trial.

167.    Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to Iowa False Claims Act, I.C.A. § 685.1, *et seq.*, on behalf of itself and the State of Iowa.

168.    Plaintiff-Relator requests this Court to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Iowa, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF IOWA:

1. Three times the amount of actual damages which the State of Iowa has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 for each false claim which Defendant caused to be presented to the State of Iowa, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to I.C.A. § 685.2;
3. Prejudgment interest; and/or
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to Iowa False Claims Act, I.C.A. § 685.1, *et seq.*, and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

45

## COUNT XV
(Louisiana Medical Assistance Programs Integrity Law,
La. Rev. Stat. § 46:437.1, *et seq.*)

169.    Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

170.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Louisiana to recover treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 46:437.1, *et seq*.

171.    Defendant further violated La. Rev. Stat. Ann. § 46:438.3 and knowingly caused false claims to be made, used, and presented to the State of Louisiana by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

172.    The State of Louisiana, by and through the Louisiana Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

173.    Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Louisiana in connection with Defendant's conduct.  Compliance with applicable Louisiana statutes and regulations was also an express condition of payment of claims submitted to the State of Louisiana.

174.    Had the State of Louisiana known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were

46

premised on false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

175. As a result of Defendant's violations of La. Rev. Stat. Ann. § 46:438.3, the State of Louisiana has been damaged in an amount to be determined at trial.

176. Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to La. Rev. Stat. Ann. §46:439.1(A) on behalf of itself and the State of Louisiana.

177. Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Louisiana, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF LOUISIANA:

1. Three times the amount of actual damages which the State of Louisiana has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant caused to be presented to the State of Louisiana, pursuant to La. Rev. Stat. § 46:438.6(C);
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to La. Rev. Stat. § 46:439.4(A) and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

47

### COUNT XVI
(Maryland False Health Claims Act,
Md. Code, Health-Gen. § 2-601, *et seq.*)

178.   Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

179.   This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Maryland to recover treble damages and civil penalties under the Maryland False Health Claims Act, Md. Code, Health-Gen § 2-601, *et seq*.

180.   Defendant violated Md. Code, Health-Gen §§ 2-601, *et seq*., and knowingly caused false claims to be made, used, and presented to the State of Maryland by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by Government Healthcare Programs.

181.   The State of Maryland, by and through the Mayland Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

182.   Compliance with the applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied and, upon information and belief, also an express condition of payment of claims submitted to the State of Maryland in connection with Defendant's conduct.  Compliance with applicable Maryland statutes and regulations was also an express condition of payment of claims submitted to the State of Maryland.

183.   Had the State of Maryland known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were

48

premised on false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

184.    As a result of Defendant's violations of Md. Code, Health-Gen § 2-601, the State of Maryland has been damaged in an amount to be determined at trial.

185.    Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Md. Code, Health-Gen § 2-604(a)(1)on behalf of itself and the State of Maryland.

186.    Plaintiff-Relator requests this Court to accept supplemental jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Maryland in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF MARYLAND:

1. Three times the amount of actual damages which the State of Maryland has sustained as a result of Defendant's conduct;
2. A civil penalty of up to $10,000 per false claim which Defendant presented or caused to be presented to the State of Maryland, pursuant to Md. Code, Health-Gen §§ 2-602(b);
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to Md. Code, Health-Gen §§ 2-601 and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

**COUNT XVII**
(Michigan Medicaid False Claims Act,
Mich. Comp. Laws § 400.601, *et seq.*)

187.    Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

188.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Michigan to recover treble damages and civil penalties under Michigan's Medicaid False Claims Act, Mich. Comp. Laws Ann. § 400.603, *et seq*.

189.    Defendant violated Michigan law and knowingly caused false claims to be made, used, and presented to the State of Michigan by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

190.    The State of Michigan, by and through the Michigan Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

191.    Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Michigan in connection with Defendant's conduct. Compliance with applicable Michigan statutes and regulations was also an express condition of payment of claims submitted to the State of Michigan.

192.    Had the State of Michigan known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were

50

premised on false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection with that conduct.

193.    As a result of Defendant's violations of the Michigan Medicaid False Claims Act, the State of Michigan has been damaged in an amount to be determined at trial.

194.    Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to the Michigan Medicaid False Claims Act on behalf of itself and the State of Michigan.

195.    Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Michigan, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF MICHIGAN:

1. Three times the amount of actual damages which the State of Michigan has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of Michigan, pursuant to Mich. Comp. Laws Ann. § 400.612;
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to the Michigan Medicaid False Claims Act and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

**COUNT XVIII**
(Minnesota False Claims Act,
Minn. Stat. § 15C.01, *et seq.*)

196.    Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

197.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Minnesota to recover treble damages and civil penalties under the Minnesota False Claims Act, M.S.A. § 15C.01, *et seq*.

198.    Defendant further violated the Minnesota False Claims Act and knowingly caused false claims to be made, used, and presented to the State of Minnesota by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

199.    The State of Minnesota, by and through the Minnesota Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

200.    Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Minnesota in connection with Defendant's conduct.  Compliance with applicable Minnesota statutes and regulations was also an express condition of payment of claims submitted to the State of Minnesota.

201.    Had the State of Minnesota known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were

52

premised on false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection with that conduct.

202.    As a result of Defendant's violations of the Minnesota False Claims Act, the State of Minnesota has been damaged in an amount to be determined at trial.

203.    Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to the Minnesota False Claims Act, on behalf of itself and the State of Minnesota.

204.    Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Minnesota, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF MINNESOTA:

1. Three times the amount of actual damages which the State of Minnesota has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 for each false claim which Defendant caused to be presented to the State of Minnesota, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to Minn. Stat. § 15C.02(a);
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to the Minnesota False Claims Act and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

53

## COUNT XIX
(Montana False Claims Act,
Mont. Code § 17-8-401, *et seq.*)

205. Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

206. This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Montana to recover treble damages and civil penalties under the Montana False Claims Act, MCA § 17-8-401, *et seq*.

207. Defendant violated the Montana False Claims Act and knowingly caused false claims to be made, used, and presented to the State of Montana by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

208. The State of Montana, by and through the Montana Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

209. Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Montana in connection with Defendant's conduct. Compliance with applicable Montana statutes and regulations was also an express condition of payment of claims submitted to the State of Montana.

210. Had the State of Montana known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were

54

premised on false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection with that conduct.

211.   As a result of Defendant's violations of the Montana False Claims Act, the State of Montana has been damaged in an amount to be determined at trial.

212.   Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to the Montana False Claims Act, on behalf of themselves and the State of Montana.

213.   Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Montana, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF MONTANA:

1. Three times the amount of actual damages which the State of Montana has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant caused to be presented to the State of Montana, pursuant to Mont. Code § 17-8-403;
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to Montana False Claims Act and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

## COUNT XX
(Nevada False Claims Act,
Nev. Rev. Stat. § 357.010, *et seq.*)

214.    Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

215.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Nevada to recover treble damages and civil penalties under the Nevada False Claims Act, N.R.S. § 357.010, *et seq*.

216.    Defendant violated N.R.S. § 357.040(1) and knowingly caused hundreds of claims to be made, used, and presented to the State of Nevada by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

217.    The State of Nevada, by and through the Nevada Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

218.    Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Nevada in connection with Defendant's conduct.  Compliance with applicable Nevada statutes and regulations was also an express condition of payment of claims submitted to the State of Nevada.

219.    Had the State of Nevada known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on

false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection with that conduct.

220.    As a result of Defendant's violations of N.R.S. § 357.040(1), the State of Nevada has been damaged in an amount to be determined at trial.

221.    Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to N.R.S. § 357.080(1), on behalf of themselves and the State of Nevada.

222.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Nevada in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests that this Court award the following damages to the following parties and against Defendant:

To the STATE OF NEVADA:

1. Three times the amount of actual damages which the State of Nevada has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 for each false claim which Defendant caused to be presented to the State of Nevada, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to N.R.S. § 357.040(2);
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to N.R.S. § 357.210 and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

<u>**COUNT XXI**</u>
(New Jersey False Claims Act,
N.J. Stat. § 2A:32C-1, *et seq.*)

223.   Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

224.   This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of New Jersey to recover treble damages and civil penalties under the New Jersey False Claims Act, N.J.S.A. § 2A:32C-1, *et seq*.

225.   Defendant violated the New Jersey False Claims Act and knowingly caused false claims to be made, used and presented to the State of New Jersey by its deliberate and systematic violation of federal and state laws, including the FCA, federal AKS and N.J.S.A. § 30:4D-17, and by virtue of the fact the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

226.   Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of New Jersey, or its political subdivisions, in violation of N.J. Stat. Ann. § 2A:32C-3(g).

227.   The State of New Jersey, by and through the New Jersey Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

228.   Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express

condition of payment of claims submitted to the State of New Jersey in connection with Defendant's conduct. Compliance with applicable New Jersey statutes and regulations was also an express condition of payment of claims submitted to the State of New Jersey.

229. Had the State of New Jersey known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection with that conduct.

230. As a result of Defendant's violations of the New Jersey False Claims Act, the State of New Jersey has been damaged in an amount to be determined at trial.

231. Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to the New Jersey False Claims Act, on behalf of itself and the State of New Jersey.

232. Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of New Jersey, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF NEW JERSEY:

1. Three times the amount of actual damages which the State of New Jersey has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 for each false claim which Defendant caused to be presented to the State of New Jersey, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to N.J.S.A. § 2A:32C-3;
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

59

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to New Jersey False Claims Act and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

## COUNT XXII
(New Mexico Fraud Against Taxpayers Act,
N.M. Stat. § 44-9-1, *et seq.*)

233.    Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

234.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of New Mexico to recover treble damages and civil penalties under the New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1, *et seq*.

235.    Defendant violated N.M. Stat. Ann. § 27-14-1, *et seq*., and knowingly caused false claims to be made, used, and presented to the State of New Mexico by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

236.    The State of New Mexico, by and through the New Mexico Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

237.    Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of New Mexico in connection with

60

Defendant's conduct.  Compliance with applicable New Mexico statutes and regulations was also an express condition of payment of claims submitted to the State of New Mexico.

238.    Had the State of New Mexico known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection with that conduct.

239.    As a result of Defendant's violations of N.M. Stat. Ann. § 27-14-1, *et seq*., the State of New Mexico has been damaged in an amount to be determined at trial.

240.    Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to N.M. Stat. Ann. § 27-14-1, *et seq*., on behalf of itself and the State of New Mexico.

241.    Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim, as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of New Mexico, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF NEW MEXICO:

1. Three times the amount of actual damages which the State of New Mexico has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of New Mexico, pursuant to N.M. Stat. Ann. § 44-9-3(C);
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to N.M. Stat. Ann. § 27-14-1, *et seq.*, and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

## COUNT XXIII
(New York False Claims Act,
N.Y. State Fin. Law § 187, *et seq.*)

242. Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

243. This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of New York to recover treble damages and civil penalties under the New York State False Claims Act, State Finance Law § 189, *et seq*.

244. Defendant violated the New York State False Claims Act, and knowingly caused false claims to be made, used, and presented to the State of New York, by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

245. The State of New York, by and through the New York Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

246. Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of New York in connection with

62

Defendant's conduct.  Compliance with applicable New York statutes and regulations was also an express condition of payment of claims submitted to the State of New York.

247.    Had the State of New York known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection with that conduct.

248.    As a result of Defendant's violations of the New York State False Claims Act, the State of New York has been damaged in an amount to be determined at trial.

249.    Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to the New York State False Claims Act, on behalf of itself and the State of New York.

250.    Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of New York, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF NEW YORK:

1. Three times the amount of actual damages which the State of New York has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 for each false claim which Defendant caused to be presented to the State of New York, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to NY State Finance Law § 189(1)(h);
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

63

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to the New York State False Claims Act, and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

## COUNT XXIV
(North Carolina False Claims Act,
N.C. Gen. Stat. § 1-605, *et seq.*)

251. Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

252. This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of North Carolina to recover treble damages and civil penalties under the North Carolina False Claims Act, N.C.G.S.A. § 1-605, *et seq*.

253. Defendant violated the North Carolina False Claims Act, and knowingly caused false claims to be made, used, and presented to the State of North Carolina, by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

254. The State of North Carolina, by and through the North Carolina Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

255. Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of North Carolina in connection with

64

Defendant's conduct. Compliance with applicable North Carolina statutes and regulations was also an express condition of payment of claims submitted to the State of North Carolina.

256.   Had the State of North Carolina known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection with that conduct.

257.   As a result of Defendant's violations of the North Carolina False Claims Act, the State of North Carolina has been damaged in an amount to be determined at trial.

258.   Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to the North Carolina False Claims Act, on behalf of itself and the State of North Carolina.

259.   Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of North Carolina, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF NORTH CAROLINA:

1. Three times the amount of actual damages which the State of North Carolina has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 for each false claim which Defendant caused to be presented to the State of North Carolina, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to N.C.G.S.A. § 1-607(a);

65

3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to North Carolina False Claims Act and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

### COUNT XXV
(Oklahoma Medicaid False Claims Act,
63 Okla. Stat. § 5053, *et seq.*)

260. Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

261. This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Oklahoma to recover treble damages and civil penalties under the Oklahoma Medicaid False Claims Act, 63 Okl. St. Ann. § 5053, *et seq*.

262. Defendant violated the Oklahoma Medicaid False Claims Act and knowingly caused false claims to be made, used, and presented to the State of Oklahoma by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

263. The State of Oklahoma, by and through the Oklahoma Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

264. Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express

66

condition of payment of claims submitted to the State of Oklahoma in connection with Defendant's conduct. Compliance with applicable Oklahoma statutes and regulations was also an express condition of payment of claims submitted to the State of Oklahoma.

265.    Had the State of Oklahoma known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection with that conduct.

266.    As a result of Defendant's violations of the Oklahoma Medicaid False Claims Act, the State of Oklahoma has been damaged in an amount to be determined at trial.

267.    Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to the Oklahoma Medicaid False Claims Act, on behalf of itself and the State of Oklahoma.

268.    Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Oklahoma, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF OKLAHOMA:

1. Three times the amount of actual damages which the State of Oklahoma has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 for each false claim which Defendant caused to be presented to the State of Oklahoma, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to 63 Okl. St. Ann. § 5053.1(B);
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

67

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to Oklahoma Medicaid False Claims Act and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

**COUNT XXVI**
(Rhode Island State False Claims Act,
R.I. Gen. Laws § 9-1.1-1, *et seq.*)

269. Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

270. This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Rhode Island to recover treble damages and civil penalties under the Rhode Island False Claims Act, Gen. Laws 1956 § 9-1.1-1, *et seq*.

271. Defendant further violated the Rhode Island False Claims Act and knowingly caused false claims to be made, used, and presented to the State of Rhode Island by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

272. The State of Rhode Island, by and through the Rhode Island Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

273. Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Rhode Island in connection with

68

Defendant's conduct. Compliance with applicable Rhode Island statutes and regulations was also an express condition of payment of claims submitted to the State of Rhode Island.

274.    Had the State of Rhode Island known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection with that conduct.

275.    As a result of Defendant's violations of the Rhode Island False Claims Act, the State of Rhode Island has been damaged in an amount to be determined at trial.

276.    Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to the Rhode Island False Claims Act, on behalf of itself and the State of Rhode Island.

277.    Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Rhode Island, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF RHODE ISLAND:

1. Three times the amount of actual damages which the State of Rhode Island has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant caused to be presented to the State of Rhode Island, pursuant to R.I. Gen. Laws § 9-1.1-3(a)(7);
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

69

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to Rhode Island False Claims Act and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

### COUNT XXVII
(Tennessee Medicaid False Claims Act,
Tenn. Code § 71-5-181, *et seq.*)

278.   Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

279.   This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Tennessee to recover treble damages and civil penalties under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181, *et seq*.

280.   Defendant violated Tenn. Code Ann. § 71-5-182(a)(1) and knowingly caused false claims to be made, used, and presented to the State of Tennessee by its deliberate and systematic violation of federal and state laws, including the FCA and AKS, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

281.   The State of Tennessee, by and through the Tennessee Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

282.   Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Tennessee in connection with

70

Defendant's conduct.  Compliance with applicable Tennessee statutes and regulations was also an express condition of payment of claims submitted to the State of Tennessee.

283.   Had the State of Tennessee known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection with that conduct.

284.   As a result of Defendant's violations of Tenn. Code Ann. § 71-5-182(a)(1), the State of Tennessee has been damaged in an amount to be determined at trial.

285.   Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Tenn. Code Ann. § 71-5-183(b)(1), on behalf of himself/herself and the State of Tennessee.

286.   Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damaged to the State of Tennessee, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF TENNESSEE:

1. Three times the amount of actual damages which the State of Tennessee has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 for each false claim which Defendant caused to be presented to the State of Tennessee, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to Tenn. Code Ann. § 71-5-182(a);
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to Tenn. Code Ann. § 71-5-183(c) and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3. An award of reasonable attorneys' fees and costs; and
4. Such further relief as this Court deems equitable and just.

## COUNT XXVIII
(Texas Medicaid Fraud Prevention Act,
Tex. Hum. Res. Code § 36.001, *et seq.*)

287.    Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

288.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Texas to recover civil remedies and civil penalties under Tex. Hum. Res. Code § 36.001, *et seq.*

289.    Defendant knowingly committed multiple unlawful acts as defined in the applicable version of the Tex. Hum. Res. Code § 36.002 and § 32.039(b) and knowingly caused false claims to be made, used, and presented to the State of Texas by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

290.    Defendant knowingly made or caused to be made false statements or misrepresentations of material fact on or after 2022 submitted to Texas Medicaid.  Defendant's false statements or misrepresentations permitted Defendant to receive benefits under the Texas Medicaid program that were not authorized or that were greater than the benefits authorized.  In doing so, Defendant violated Texas Human Resources Code § 36.002(1).

291.    The State of Texas, by and through the Texas Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

292.    Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Texas in connection with Defendant's conduct.  Compliance with applicable Texas statutes and regulations was also an express condition of payment of claims submitted to the State of Texas.

293.    Had the State of Texas known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection with that conduct.

294.    As a result of Defendant's violations of Tex. Hum. Res. Code § 36.002 and § 32.039(b), the State of Texas has been damaged in an amount to be determined at trial.

295.    Defendant did not, within 30 days after it first obtained information as to such violations, furnish such information to officials of the State of Texas responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State of Texas regarding the claims for reimbursement at issue.

296.    Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Tex. Hum. Res. Code § 36.101, on behalf of itself and the State of Texas.

73

297.     Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate remedies and penalties to the State of Texas, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following civil remedies and penalties to the following parties and against Defendant:

To the STATE OF TEXAS:

1.  Two times the value of all payments or monetary or in-kind benefits provided to Defendant under the Medicaid program as a result of Defendant's unlawful acts, pursuant to Texas Human Resources Code § 36.052(a)(4);
2.  A civil penalty of not less than $14,308 and not more than $28,619 pursuant to Tex. Hum. Res. Code § 36.052(a)(3), as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to V.T.C.A. Hum. Res. Code § 36.052(a)(3);
3.  Recovery of the value of all payments or monetary or in-kind benefits provided to Defendant under the Medicaid program as a result of Defendant's unlawful acts, together with pre-judgment and post-judgment interest, pursuant to Texas Human Resources Code § 36.052(a)(1) and (2).; and
4.  All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1.  The maximum amount allowed pursuant to Tex. Hum. Res. Code § 36.110, and/or any other applicable provision of law;
2.  Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3.  An award of reasonable attorneys' fees and costs; and
4.  Such further relief as this Court deems equitable and just.

## COUNT XXIX
(Vermont False Claims Act,
32 V.S.A. § 630, *et seq.*)

298.     Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

74

299.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Vermont to recover treble damages and civil penalties under the Vermont False Claims Act, 32 V.S.A. § 630, *et seq*.

300.    Defendant violated V.S.A. § 630, *et seq*., and knowingly caused false claims to be made, used, and presented to the State of Vermont by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

301.    The State of Vermont, by and through the Vermont Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

302.    Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied and, upon information and belief, also an express condition of payment of claims submitted to the State of Vermont in connection with Defendant's conduct.  Compliance with the applicable Vermont statutes and regulations was also an express condition of payment of claims submitted to the State of Vermont.

303.    Had the State of Vermont known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection with that conduct.

304.    As a result of Defendant's violations of V.S.A. § 630, *et seq*., the State of Vermont has been damaged in an amount to be determined at trial.

305.    Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to V.S.A. § 630, *et seq.*, on behalf of itself and the State of Vermont.

306.    Plaintiff-Relator requests this court to accept supplemental jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Vermont in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF VERMONT:

1.  Three times the amount of actual damages which the State of Vermont has sustained as a result of Defendant's conduct;
2.  A civil penalty of not less than $14,308 and not more than $28,619 per false claim which Defendant caused to be presented to the State of Vermont, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to V.S.A. § 631(b);
3.  Prejudgment interest; and
4.  All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1.  The maximum amount allowed pursuant to V.S.A. § 630 *et seq.*, and/or any other applicable provision of law;
2.  Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3.  An award of reasonable attorneys' fees and costs; and
4.  Such further relief as this Court deems equitable and just

**COUNT XXX**
(Virginia Fraud Against Taxpayer Act,
Va. Code § 8.01-216.1, *et seq.*)

307.    Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

76

308.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the Commonwealth of Virginia for treble damages and penalties under Virginia Fraud Against Tax Payers Act, Va. Code § 8.01-216.3a.

309.    Defendant violated Virginia's Fraud Against Tax Payers Act, Va. Code § 8.01-216.3a, and knowingly caused false claims to be made, used, and presented to the Commonwealth of Virginia by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that none of the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

310.    The Commonwealth of Virginia, by and through the Virginia Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and third-party payers in connection therewith.

311.    Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the Commonwealth of Virginia in connection with Defendant's conduct.  Compliance with applicable Virginia statutes and regulations was also an express condition of payment of claims submitted to the Commonwealth of Virginia.

312.    Had the Commonwealth of Virginia known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection with that conduct.

77

313.   As a result of Defendant's violations of Virginia's Fraud Against Tax Payers Act, Va. Code § 8.01-216.3a, the Commonwealth of Virginia has been damaged in an amount to be determined at trial.

314.   Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint, and has brought this action pursuant to Virginia's Fraud Against Tax Payers Act, Va. Code § 8.01-216.3, on behalf of itself and the Commonwealth of Virginia.

315.   Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the Commonwealth of Virginia, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the COMMONWEALTH OF VIRGINIA:

1.   Three times the amount of actual damages which the Commonwealth of Virginia has sustained as a result of Defendant's conduct;
2.   A civil penalty of not less than $14,308 and not more than $28,619 for each false claim which Defendant caused to be presented to the Commonwealth of Virginia, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant Va. Code § 8.01-216.3(A);
3.   Prejudgment interest; and
4.   All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1.   The maximum amount allowed pursuant to Va. Code § 32.1-315 and/or any other applicable provision of law;
2.   Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;
3.   An award of reasonable attorneys' fees and costs; and
4.   Such further relief as this Court deems equitable and just.

78

**COUNT XXXI**
(Washington Medicaid Fraud False Claims Act,
Rev. Code Wash. § 74.66.005, *et seq.*)

316.     Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

317.     This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Washington to recover treble damages and civil penalties under the Washington State Medicaid Fraud False Claims Act, Rev. Code Wash. § 74.66.005, *et seq*.

318.     Defendant violated the Washington State Medicaid Fraud False Claims Act, Rev. Code Wash. § 74.66.005, *et seq*., and knowingly caused false claims to be made, used, and presented to the State of Washington, by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its conduct were ineligible for reimbursement by the Government Healthcare Programs.

319.     The State of Washington, by and through the Washington Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

320.     Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Washington in connection with Defendant's conduct.  Compliance with applicable Washington statutes and regulations was also an express condition of payment of claims submitted to the State of Washington.

321.     Had the State of Washington known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were

premised on false and/or misleading information, it would not have paid the claims submitted by

Defendant, healthcare providers, and/or third-party payers in connection with that conduct.

322.    As a result of Defendant's violations of the Washington State Medicaid Fraud

False Claims Act, Rev. Code Wash. § 74.66.005, *et seq.*, the State of Washington has been

damaged in an amount to be determined at trial.

323.    Plaintiff-Relator is an LLC with direct and independent knowledge of the

allegations of this Complaint, and has brought this action pursuant to the Washington State

Medicaid Fraud False Claims Act, Rev. Code Wash. § 74.66.005, *et seq.*, on behalf of itself and

the State of Washington.

324.    Plaintiff-Relator requests this Court to accept pendant jurisdiction of this related

state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts

separate damages to the State of Washington, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the

following damages to the following parties and against Defendant:

To the STATE OF WASHINGTON:

1. Three times the amount of actual damages which the State of Washington has sustained as a result of Defendant's conduct;
2. A civil penalty of not less than $14,308 and not more than $28,619 for each false claim which Defendant caused to be presented to the State of Washington, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 pursuant to Rev. Code Wash. § 74.66.020;
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to the Washington State Medicaid Fraud False Claims Act, Rev. Code Wash. § 74.66.005, *et seq.*, and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

80

3. An award of reasonable attorneys' fees and costs; and

4. Such further relief as this Court deems equitable and just.

## COUNT XXXII
(District of Columbia False Claims Act,
D.C. Code § 2-381.01, *et seq.*)

325. Plaintiff-Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

326. This is a *qui tam* action brought by Plaintiff-Relator and the District of Columbia to recover treble damages and civil penalties under the District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-381.01, *et seq*.

327. Defendant violated D.C. Code § 2-381.02 and knowingly caused false claims to be made, used, and presented to the District of Columbia by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that the claims submitted in connection with its illegal conduct were ineligible for reimbursement by the Government Healthcare Programs.

328. The District of Columbia, by and through the District of Columbia Medicaid program and other District of Columbia healthcare programs, and unaware of Defendant's illegal conduct, paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection therewith.

329. Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the District of Columbia in connection with Defendant's illegal conduct. Compliance with applicable District of Columbia statutes and regulations was also an express condition of payment of claims submitted to the District of Columbia.

81

330.    Had the District of Columbia known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on false and/or misleading information, it would not have paid the claims submitted by Defendant, healthcare providers, and/or third-party payers in connection with that conduct.

331.    As a result of Defendant's violations of D.C. Code § 2-381.02, the District of Columbia has been damaged in an amount to be determined at trial.

332.    Plaintiff-Relator is an LLC with direct and independent knowledge of the allegations of this Complaint and has brought this action pursuant to D.C. Code § 2-381.03(b) on behalf of itself and the District of Columbia.

333.    Plaintiff-Relator requests this Court to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the District of Columbia, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the DISTRICT OF COLUMBIA:

1. Three times the amount of actual damages which the District of Columbia has sustained as a result of Defendant's illegal conduct;
2. A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant caused to be presented to the District of Columbia, pursuant to D.C. Code § 2-381.02;
3. Prejudgment interest; and
4. All costs incurred in bringing this action.

To PLAINTIFF-RELATOR:

1. The maximum amount allowed pursuant to D.C. Code § 2-381.03 and/or any other applicable provision of law;
2. Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

82

3. An award of reasonable attorneys' fees and costs; and

4. Such further relief as this Court deems equitable and just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff-Relator hereby

demands a trial by jury on all Counts.

Dated: August 12, 2025                    Respectfully submitted,

MILLER SHAH LLP

*/s/ James C. Shah*
James C. Shah
Bruce D. Parke
Alec. J. Berin
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Tel: (866) 540-5505
Fax: (866) 300-7367
Email: jcshah@millershah.com
      bdparke@millershah.com
      ajberin@millershah.com

James E. Miller
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT  06412
Tel: (866) 540-5505
Fax: (866) 300-7367
Email: jemiller@millershah.com
      lrubinow@millershah.com

*Attorneys for Plaintiff-Relator*

83